Majoeity Report Presented.
Assembly Chamber, Mcweh 10, 1868.
Mr. F. H. Woods, from the majority of the committee on privileges and elections, submitted a report in writing, upon the contested seat of lion. Jacob Worth of Kings county, the sitting member, contested by John Raber of said county, which report was received and read.
Report of the Committee on Privileges and Elections in this Matter of the Election of Jacob Worth, as Member of Assembly for the Sixth Assembly District of the State of Hew Tore, Contested by John Raber.

To the Assembly:

The standing committee on privileges and elections, to whom was referred the memorial of John Raber, claiming that he was entitled to the seat as member of Assembly, from the sixth Assembly district, in the county of Kings, now occupied by Jacob Worth, respectfully report:
*417 That they have been attended by the contestant, Mr. Haber, and by the sitting member, Mr. Worth; that they have examined the evidence in the case taken before the Mayor of Brooklyn,1 and certified to the clerk of the Assembly, in accordance with the statute; that they have taken all the additional testimony offered by either of the interested parties, and have heard the arguments of the respective counsel for the contestant and the sitting member, and have duly considered the same.
It appeared before the committee, that upon the face of the returns of election in' said Assembly district, which were on file, and upon which alone the board of supervisors acted in cauvassing and‘awarding the certificate of election to the sitting member, Mr. Worth received two thousand two hundred and twenty-nine votes, and Mr. Baber two thousand one hundred and ninety-nine, showing a majority of thirty for Mr. Worth.
In arriving at this result the vote of the sixth election district of the sixteenth ward, in the ci(y of Brooklyn, was counted as four hundred and thirty-fi/oe (435) for Mr. Worth, and one hundred and eight (108) for Mr. Baber; that Tjeing on the face of the returns.
The contestant claimed that he actually received in the said election district one hundred and sixty-eight (168) votes instead of oue hundred and eight, and that the sitting member only received three hundred and seventy-five votes instead of four hundred and thirty-five, which, if true, would make a difference of one hundred and twenty in the result, and give Mr. Baber a majority of ninety (90). The sitting member denies the claim of the contestant as to the actual vote of the sixth election district and claims that it was, in fact, as shown in the returns. This was the only issue contested before the committee. The contestant gave evidence showing that at the close of the election in said district, the votes for the Assemblyman were counted by the two canvassers, the two poll clerks, and one of the inspectors of election, and one other person.
That upon the count, it appeared that Baber received one hundred and sixty-eight votes, and Mr. Worth, three'Imndred and seventy-fi/oe votes; that the inspector kept tally, as also did one of the poll clerks, and- both tallies agreed in the result above stated; that the result was so announced, and a slip containing that result was sent by one of the poll clerks to police head-quarters, and appeared in the public prints the next day, without correction, and t’hat no other announcement or count of the vote was made. One of the poll clerks, *418 sworn on behalf- of the contestant, testifies, that be made out one of the original returns containing the above result of the vote, and wrote part of “another” return (the law requiring that three returns should be made out by the canvassers — one to be sent to the metropolitan police head-quarters, one to the city cleric’s office, Brooklyn, and one to the county clerk’s office). That of the three returns now appearing on file, the one in the metropolitan police office is the one completed by him, but has been altered since it was so completed, not by him, and without his knowlege, by erasing “sixty” in the statement of Baber’s vote, and inserting “ and ” in its place, so that it reads “ one hundred cmd eight ” instead of “ one hundred and sixiy-eight” as originally written, and by erasing “three seventy,” in the statement of Mr. Worth’s vote, and inserting in the place thereof “ four thirty,” so that it reads “four hundred and thirty-fme” instead of u three hundred and seventyfve,” as it was originally. He also swears that no part of either of the other returns on file are in his handwriting. The inspector of election also swears that all the original returns were made out by and signed by at least one of the canvassers before he left, and that^ there was no dispute or question of the correctness of the count of one hundred and sixty-eight for Baber. That he kept the tally and such was the actual vote cast. The foregoing evidence was corroborated in several particulars, and -was sufficient to establish, in the opinion of the committee, that Mr. Baber had received a majority of the votes in that Assembly district. That the returns on file were not those originally made out by the canvassers, except the one filed with the metropolitan police, which had been improperly altered, so as to’ do injustice to Baber.
On the part of the sitting member, evidence was introduced to show that the result was announced and returns were first made out giving one hundred and' sixty-eight to Baber and three hundred and seven tv-five to Mr. Worth, solely through a mistake of one of the poll clerks in reading an “ 0 ” made by him in pencil in putting down Baber’s vote as “6,” that is one hundred and sixty-eight instead of one hundred and eight,. and that this mistake was not discovered until after midnight, and then by Mr. Ward, a brother-in-law of Mr. Worth, and one of the canvassers. That it was then corrected in all the returns (no returns having been then signed),'and the alterations in the returns on file in'the metropolitan police-office were made by the very poll- clerk wdio was sworn by the committee, but who testified that he did not make them or know of their being made. It is *419 impossible to harmonize this account with the statements of the witnesses of the contestant, and the committee were compelled to reject either the one or the other.
The committee, after careful consideration, have been unable to give to this explanatory evidence on the part of the sitting member equal weight with that of the contestant. Their reasons, among others, are: That the account is improbable intrinsically, andrendered more so by an inspection of the paper, where the figures occur, in which the figure claimed to be an “ 0 ” is unmistakably a “ 6,” and manifestly intended to be by the person who made it; the figures “ 375 ” and “ 168 ” appear in several places on the same paper, and in one place these figures are carefully erased, and “435” and “ L08” written over them.
2d. That the witnesses who speak to the discovery of the mistake, are, with one exception, confessedly partial to the sitting member. Two of them were the canvassers; one of whom is Mr. "Worth’s brother-in-law, and the other is his most “ intimate friend,” whose appointment as canvasser of this election district, in place of another indifferent person originally 'appointed, the circa instances, shown pointedly, lead the committee to the belief, was procured through the active interference and exertions of Mr. Worth. Without intending any unjust reflections, the committee cannot reconcile this interference of Mr. Worth with the appointment of canvassers of this district, so as to procure both devoted to his interests, with any fair design as to the canvass. The third was the associate counsel for Mr. Worth on the investigation before the mayor, and admitted himself to be his backer, and to have bet considerable sums of money upon, and boasts, of his superior management of Mr. Worth’s election. It was not, according to his own account, until after this gentleman’s arrival at the polls, after twelve o’clock at night, and after all other bystanders had left the place, that the mistake was discovered.
3d. No attempt was made to correct the reports sent to the public prints at the time, and, although several of the witnesses were before the mayor, no such pretense was there made, nor was it publicly disclosed or explained to the contestant, or as far as appears, to any other person, that this mistake was made or had been discovered, or how it happened that the slip of the result sent by the poll clerk to police head-quarters for general information was not correct.
On the other hand, the entire impartiality and want of interest on' the part of three witnesses relied upon by the contestant, do not *420 appear to be questioned. Under these circumstances, the committee have regarded their statements as more worthy of credit than the explanations, inconsistent therewith, spoken of by the witnesses of the sitting member.
It is proper to add that various other circumstances disclosed in the evidence also tend, in the opinion of the committee, to the same conclusion.
The committee are therefore of the opinion that John Haber actually received two thousand two hundred and fifty-nine votes instead of two thousand one hundred and ninety-nine votes, and that Mr. Worth actually received but two 'thousand one hundred and sixty-nine votes, instead of two thousand two hundred and twenty-nine, and Mr. Haber .was therefore elected by a majority of ninety, and is entitled to the seat occupied by Mr. Worth.
The committee recommend the passage of the following resolution, herewith submitted:
Resolved, That John Haber was duly elected member of Assembly from the sixth district of the county of Kings, and as such, is entitled to the seat in this body occupied by Jacob Worth, and that the said John Haber be sworn in, and admitted to his seat in this House as such member.
Respectfully submitted.
FRANCIS IT. WOODS,
JOHN B. MADDEN,
JACKSON A. SUMNER,
JAMES LOUGJIRAN.
See "testimony accompanying report, pages 7-45.
Assembly Documents, 1868, vol. 8, No. 83.-
Mr. Pitts moved to make the consideration of said subject a special order for Friday next, immediately after the reading of the Journal.
Mr. Speaker then put the question, whether the House would- agree to said motion of Mr. Pitts, and it was determined in the affirmative.
Assembly Journal, 1868, vol. 1, page 429.
CONSIDERATION OF REPORTS.
Assembly Chambee, March 13, 1868.
Mr. Speaker announced the special order for this morning the consideration of the reports of the majority and minority in the case of the contested seat of Hon. Jacob Worth, contested' by John Haber. "
*421 BePORT OE MINORITY PRESENTED.
Mr. Pitts, from the minority of the committee, presented the following report and resolution, and moved the adoption of the same as a substitute for the majority report and resolution.

To the Honorable the Assembly :

The undersigned, member of the committee on privileges and elections, in the matter of Hon. John Haber, who contests the election of Hon. Jacob Worth, and claims his seat in this House, most respectfully reports: That he is unable to agree with the majority of the committee in awarding the seat to the contestant.
It is claimed by the contestant that his vote was changed in the sixth district of the sixteenth ward in the city of Brooklyn from one hundred and sixty-eight to one hundred and eight, and the vote of Mr. Worth changed from three hundred and seventy-five to four hundred and thirty-five.
To sustain this claim, the contestant introduces witnesses Lang and Kleinlien, who are really the only witnesses testifying upon this point. There was other evidence introduced, but it is not at all clear or explicit, and is susceptible of reasonable explanation, sustaining the sitting member — -in fact the balance of the witnesses do not swear to this charge at all.
Hpon the part of the sitting member, there were introduced witnesses Cunningham, Lindsley and Ward, who unqualifiedly contradicted the witnesses of the contestant, and testify that the vote in this election district was. honestly returned. They testify that the facts are, that a mistake was discovered in the vote of both Baber and Worth, and this mistake was corrected;, that Lang, who was present himself, aided in correcting this mistake. Hpon this latter point, Lang is contradicted by two witnesses.
The contestant holds the affirmative of this issue, and every presumption of law is in favor of the validity of the election, and we should not turn Mr. Worth out of his seat until convinced by proof that he is not entitled to the same. The sitting member has produced more witnesses and evidence before the committee than the contestant, and of as reliable a character. The evidence of Baber’s witnesses can only be harmonized- by allowing Mr. Worth his seat. We should not listen to what has been said outside of this case, but decide it upon the evidence and the law, which, in this instance, demands that Mr. Worth retain his seat. I therefore now respect- *422 fulfy report and recommend tlie adoption of the following resolution :
Hesolved, That Hon. Jacob 'Worth was legally elected member of Assembly from the sixth Assembly district of the State of Hew York.
EDMUND L. PITTS.
Ma/roh 13, 1868.
Mr. Speaker put the question, whether the House would agree to said motion of Mr. Pitts, and it was determined in the negative. Ayes 47. Hoes JO.
R.EPORT OF MAJORITY ADOPTED.-JoHN RABER AWARDED SEAT.
Mr. Speaker put the question, whether the House would agree to the adoption of the majority report and resolution, and it was determined in the affirmative. Ayes 72. Hoes 46.
Mr. Baber Sworn in.
The Hon. John Raber then appeared, and was sworn in by the Speaker, and took his seat as a member of this blouse.
Assembly Journal, 1868, vol. 1, page 454 to 459.